AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 5-23MJ094 |
| Michael Lloyd Barrett | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | ) | |

OCT 3 2023 PM2:33
FILED - USDC - NDTX - LU

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **October 2, 2023** in the county of **Lubbock** in the **Northern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(a)(6), 924(a)(2), and 2 | False Statement to a Firearms Dealer and Aiding and Abetting |

This criminal complaint is based on these facts:
(see attached affidavit)

☑ Continued on the attached sheet.

_____
Complainant's signature

Mitchell Fish, ATF Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of FED. R. CRIM. P. 4.1 by telephone this **3rd** day of **October**, 2023.

Date: 10/3/23

_____
Judge's signature

City and state: Lubbock, Texas

D. Gordon Bryant, Jr., U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF COMPLAINT

1.  I, Curtis M. "Mitchell" Fish, affiant herein, being duly sworn, state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Lubbock, Texas, Field Office. I have been a Special Agent with ATF since 2021. Prior to my tenure as a Special Agent, I was employed as a police officer and detective with the Lubbock Police Department (LPD) from 2010 to 2021. The information contained in this affidavit is based upon my personal experience and information relayed to me by other law enforcement officers involved in this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause to believe a crime has been committed and that the defendant committed it, I have not included each and every fact known to me in this affidavit.

2.  As a result of my training and experience, I am familiar with Federal Firearms Laws, including 18 U.S.C. §§ 922(a)(6), 924(a)(2), which makes it unlawful for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, manufacturer, dealer, or collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or like to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter. There are five elements to 18 U.S.C. §§ 922(a)(6), 924(a)(2):[1] (1) that the defendant made a false written statement, (2) that the defendant knew the statement was false, (3) that the statement

---

[1] Fifth Circuit Pattern Jury Instruction 2.43B (5th Cir. 2019).

**Affidavit in Support of Complaint – Page 1**

was made in connection with the acquisition of a firearm from a licensed firearms dealer, (4) that the statement was intended or was likely to deceive a licensed firearm dealer, and (5) that the alleged false statement was material to the lawfulness of the sale or disposition of the firearm.

3. I am also familiar with 18 U.S.C. § 2, Aiding and Abetting. Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime. The elements 18 U.S.C. § 2 are:[2] (1) that the offense of false statement to a firearms dealer was committed by some person, (2) that the defendant associated with the criminal venture, (3) that the defendant purposefully participated in the criminal venture, and (4) that the defendant sought by action to make that venture successful.

4. On Friday, September 29, 2023, an assistant manager at SharpShooters, a Federal Firearms License Holder, 5220 Marsha Sharp Freeway, Lubbock, Texas, within the Northern District of Texas, contacted me regarding a suspicious transfer of four AR-15 stripped lower receivers (that is, not containing the final parts required for a firearm to fire but still the regulated portion with the markings and serial number required by Federal law, and meeting the definition of a firearm under federal law) to Tekeyha Dejonna Lewis. The assistant manager advised that they would not be completing the transaction due to their concerns and told Lewis that she had been delayed, that is the FBI NICS (National Instant Check System) needed to conduct additional research before clearing her to possess a

---

[2] Fifth Circuit Pattern Jury Instruction 2.04 (5th Cir. 2019).
Affidavit in Support of Complaint – Page 2

firearm, but that they would contact her once the results of the background check were completed.

5. On Monday, October 2, 2023, I contacted the Assistant Manager, and I told him that I would meet him at the store. Upon arrival, he presented me with an in-house sales invoice with Lewis' information on it as well as a signed ATF Form 4473 that Lewis completed on September 29, 2023. When reviewing the form, I observed that it also showed that Lewis' background investigation by NICS had been completed and that she received a "proceed," that is, NICS cleared her firearms purchase. Additionally, I observed that for her answer to question "10" which asks, "Current State of Residence and Address," she answered "2615 Parkway Driver, Lubbock, Texas, 79403." I also observed that she checked yes for her answer to question 21(a): "Are you the actual transferee/buyer of all firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you,**" indicating that she was the actual transferee/buyer.

6. While speaking with the salesman who helped Lewis, he advised that during routine conversation, she did not seem to know much about the AR-15 receivers that she bought; she couldn't advise what caliber she intended to build them out as, and she did could not advise if she intended to build them out as a pistol or a rifle. The salesman also advised that Lewis was accompanied by an unidentified female when she attempted to complete the purchase on Friday, September 29, 2023. The salesman also advised that she

Affidavit in Support of Complaint – Page 3

called multiple times on Saturday, September 30, inquiring about the status of her background check. While I was at SharpShooters, Lewis called again and asked about her background check. The employee told her that it had come back clear, and Lewis advised that she got off work at 4:00 p.m. and would be coming to the shop to complete the transfer afterwards. I advised the owner and employees of SharpShooters that we would return to attempt to speak with Lewis when she arrived to complete the transfer.

7. At approximately 3:30 p.m., other ATF agents and I began conducting surveillance at SharpShooters. At approximately 5:02 p.m. ATF Special Agent Yates and I both observed Lewis walk into the business. Another agent observed that she had exited the driver's side of a green in color Kia Soul car bearing Texas registration KCD3822. Lewis updated the ATF Form 4473 with a corrected street name for her address (changing the words "Parkway Driver" to "Parkway Drive") and SharpShooters recertified the form. As Lewis went to pay for the transfers, that being $30 per item for a total of $120, she advised she did not have enough money and would have to cash a check to pay for it.

8. She exited the business and agents moved in and made contact with her and the other occupant of her vehicle, identified as her sister-in-law. I contacted Lewis and introduced myself and then identified myself as an ATF agent. I then asked her what brought her to the store that day and she advised she was picking up something. I then asked what she was picking up and she advised lower receivers to build an AR-15. I then asked her if they were for her, and she said "yes sir." I then asked her if she was sure and asked who they were for. She confessed that they were for a friend, and eventually identified him as "Mike." I then advised her it was illegal for her to buy a firearm for

Affidavit in Support of Complaint – Page 4

someone other than herself, and she advised that it was her first time buying a firearm and that she really didn't know anything about guns. She stated that he ("Mike") told her to buy them and that he purchased and paid for them off the internet. Further into our conversation, she advised that while she listed the address "2615 Parkway Driver," and that this was corrected on the finalized 4473 to read 'Parkway Drive," that she *actually* resided at "1711 East 28th Street" and had lived there since April. She also stated that she had not lived at the Parkway Drive address for approximately two years and that it was her grandparents' address.

9. I asked Lewis how she spoke to "Mike," and she said that she usually texted him. I asked if I could view the text messages between the two of them and she allowed me to do so. While looking through the messages, I observed that he sent a screen shot of a purchase from Palmetto State Armory listing her name as the receiver and SharpShooters as the shipping location. I observed the address at the bottom of the screen shot to be consistent with that of Palmetto State Armory's Web site.

10. I then saw that "Mike" sent her a link to the ATF Web site (www.atf.gov) specifically linked to the ATF Form 4473, Firearms Transaction Record. "Mike" further went on to state in a text message to Lewis, "Section B n D is what you fill out" and Lewis responded, "That looks confusing. So I have to I have a gun when I fill this out?" "Mike" responded, "No. Put info. Answer Section 21. In part b. When I c you we'll look over it." Lewis asked how long it would take for the items to get shipped to the store and "Mike" stated, "I use that shop all the time to buy shit. It's relatively quick. Bout a week. Probably next Monday." "Mike" then went on to say that there are more things there that he wants

Affidavit in Support of Complaint – Page 5

and that he loves that store.

11. During my conversation with Lewis, I asked her if she was supposed to give the firearms that she bought to "Mike" on October 2, 2023, and she advised that she was. I then asked if she would be willing to call and ask if he would meet her to get the firearms so that myself and other ATF Agents could at least identify "Mike." She advised that she would.

12. Lewis, ATF SA Ragsdale, and I got into my vehicle, and Lewis placed a consensually recorded phone call to the contact in her phone as "Mike." She told "Mike" that she picked-up the "stuff" (referring to the firearms). He asked if they let her leave and she told him that they did. She then told him that the transfer fee was $30 per firearm not $30 total and that she didn't want to keep the items with her and wanted him to come and get them. He advised that he would. He asked how much to bring to her and she said "Just 70" because he had already given her $30 for the transfer fee. They then agreed to meet at the Guest House Inn, 3815 21st Street, Lubbock, Texas.

13. Lewis allowed me to view the dating profile where she met "Mike" and also advised that he drives a white in color Mercedes. Lewis also stated that she knew him to carry a firearm. Within his profile I observed two photos of "Mike" that were of sufficient quality to compare, should "Mike" arrive on-scene to confirm it was the same individual.

14. At approximately 7:00 p.m., ATF Agents as well as a Lubbock County Sheriff's Office Canine Deputy and a Lubbock Police Department Canine Officer established surveillance in the area of the Guest House Inn. At approximately 7:40 p.m., an ATF Agent observed a white in color Mercedes pull into the parking lot and park. At

approximately the same time, "Mike" sent a text message to Lewis advising that he had arrived. Other agents and I moved in and took "Mike," subsequently identified as Michael Lloyd Barrett, a convicted felon from New Jersey, into custody without further incident. A routine warrant check showed no outstanding warrants, however a query of Barrett's criminal histories showed he had prior arrests in five States including at least one felony conviction from the State of New Jersey.

15. Based on the above, I believe that probable cause exists that Michael Barrett paid for and ordered four AR-15 lower receivers, that he had them shipped to SharpShooters after paying for them, that he used Lewis to complete the paperwork for them, and that Lewis provide both a false address and false answer to question 21(a) regarding being the actual purchaser of the firearms in question. I placed Barrett under arrest for false material statement during the purchase of firearms and aiding and abetting, in violation of 18 U.S.C. §§ 922(a)(6) and 2, and booked him at the Lubbock County Detention Center on a 48-hour Federal Hold with the concurrence of an Assistant United States Attorney.

_____
Curtis "Mitchell" Fish, Special Agent
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone this 3rd day of October, 2023.

_____
D. Gordon Bryant
UNITED STATES MAGISTRATE JUDGE